**IN THE UNITED STATES BANKRUPTCY COURT FOR THE**
**EASTERN DISTRICT OF TENNESSEE**

In re

DAVID HODGES
TELENA HODGES

        Debtors

Case No. 06-33078

**MEMORANDUM ON MOTION OF DEBTORS**
**TO COMPEL ABANDONMENT OF REAL PROPERTY COMMONLY**
**KNOWN AS 8038 RUTLEDGE PIKE, KNOXVILLE, TENNESSEE**

**APPEARANCES:**    GRIBBLE CARPENTER & ASSOCIATES
        Keith L. Edmiston, Esq.
        118 Parliament Drive
        Maryville, Tennessee  37804
        Attorneys for Debtors

        MAYER & NEWTON
        John P. Newton, Jr., Esq.
        1111 South Northshore Drive
        Suite S-570
        Knoxville, Tennessee  37919
        Attorneys for John P. Newton, Jr., Chapter 7 Trustee

**RICHARD STAIR, JR.**
**UNITED STATES BANKRUPTCY JUDGE**

This contested matter is before the court on the Motion of Debtors to Compel Abandonment of Real Property Commonly Known as 8038 Rutledge Pike, Knoxville, TN 37924 (Motion to Compel Abandonment) filed by the Debtors on January 21, 2013, pursuant to Rule 6007(b) of the Federal Rules of Bankruptcy Procedure, asking the court to compel the Chapter 7 Trustee to abandon the Debtors' residential real property located at 8038 Rutledge Pike, Knoxville, Tennessee (Rutledge Pike Property).  The Chapter 7 Trustee filed an Objection to Motion of Debtors to Compel Abandonment of Real Property Commonly Known as 8038 Rutledge Pike, Knoxville, TN 37924 on January 30, 2013, arguing that equity in the Rutledge Pike Property belongs to the estate.  Noland Company filed a Response to Motion of Debtors to Compel Abandonment of Real Property Commonly Known as 8038 Rutledge Pike, Knoxville, TN 37924 on January 29, 2013, stating that it had a recorded judgment lien on the Rutledge Pike Property and had filed a secured claim in the amount of $71,425.72 on January 29, 2007.

Under the terms of the scheduling Order entered on January 31, 2013, wherein the court took judicial notice of certain undisputed material facts of record in the Debtors' bankruptcy case, the parties agreed that an evidentiary hearing was not required and that the Motion to Compel Abandonment could be decided on stipulations and briefs.  Accordingly, the parties filed a Joint Stipulation of Undisputed Facts and Documents Relevant to Disposition of Motion of Debtors to Compel Abandonment (Joint Stipulations) on February 13, 2013.  The Brief of Debtors in Support of Law in Support of Motion of Debtors to Compel Abandonment of Real Property Commonly Known as 8038 Rutledge Pike, Knoxville, TN 37924 and the Chapter 7 Trustee's Brief in Support of Objection to Motion to Compel Abandonment were both filed on February 25, 2013.

This is a core proceeding. 28 U.S.C. § 157(b)(2)(A), (O) (2006).

# I

On December 20, 2006, the Debtors, acting *pro se*, filed a Voluntary Petition commencing their case under Chapter 7 of the Bankruptcy Code. On February 12, 2007, counsel for the Debtors entered his appearance and, on February 16, 2007, the Debtors filed an amended Voluntary Petition and amended schedules. JT. STIPS. at ¶ 1. In their amended schedules, the Debtors valued the Rutledge Pike Property at $172,000.00, subject to first and second mortgages held by First Tennessee Bank totaling $143,593.32. JT. STIPS. at ¶¶ 3, 17. On February 21, 2007, an Order Converting Case Under [Chapter] 7 to a Case Under Chapter 13 was entered converting the Debtors' case to Chapter 13.

At the end of their Chapter 13 bankruptcy case, because they had not filed tax returns, the Chapter 13 Trustee filed a motion to reconvert to Chapter 7. JT. STIPS. at ¶ 8. The Debtors could not pay the $8,000.00 that the Chapter 13 Trustee determined would have been received and paid into their bankruptcy estate had they timely filed their returns, and the case was reconverted to Chapter 7 on May 31, 2012. JT. STIPS. at ¶¶ 9-10. On October 19, 2012, the Chapter 7 Trustee filed a Notice of Assets, and Beverly Lemings was authorized to be employed by the estate to sell the Rutledge Pike Property; however, to date, there have been no offers to purchase the property. JT. STIPS. at ¶¶ 11-13.

The Debtors claimed a homestead exemption in the amount of $7,500.00 and reaffirmed their obligations to First Tennessee Bank which, as of September 5, 2012, totaled $89,276.51, the amount owing after the Debtors made payments in the aggregate amount of $54,316.81 through their Chapter 13 plan. JT. STIPS. at ¶¶ 14-15, 18. Additionally, the Noland Company had recorded judgment liens on May 12, 2006, and November 16, 2006, in the amounts of $6,928.33 and $63,300.89, respectively. JT. STIPS. at ¶¶ 5-6; EX. 1; EX. 2. However, the Chapter 7 Trustee and Noland Company agreed that, upon the sale of the Rutledge Pike Property, the estate would receive 50% of any equity realized and Noland Company would release its judgment liens. Thereafter, on January 21, 2013, the Debtors filed the Motion to Compel Abandonment.

As defined by the scheduling Order entered on January 31, 2013, the issue the court is called upon to resolve is whether the Chapter 7 Trustee should be directed to abandon the Rutledge Pike Property in which the Debtors reside as a burdensome asset of the estate or because it is of inconsequential value and benefit to the estate, or whether the increased equity in the Rutledge Pike Property created by the Debtors' payments on the mortgage during the pendency of their Chapter 13 case became property of the Chapter 7 bankruptcy estate upon conversion from Chapter 13 to Chapter 7.

## II

When the Debtors filed their Voluntary Petition on December 20, 2006, their bankruptcy estate, consisting of "all legal or equitable interests of the debtor[s] in property as of the commencement of the case[,]" was created. 11 U.S.C. § 541(a) (2006). Upon his appointment and

his subsequent re-appointment when the case was reconverted to Chapter 7, the Chapter 7 Trustee, pursuant to 11 U.S.C. §§ 323(a) and 704(a)(1) (2006), became the representative of the Debtors' bankruptcy estate, succeeding to their interests in property of the estate and inheriting the responsibility to use estate property for the best interests of creditors, including the sale of property pursuant to 11 U.S.C. § 363 (2006). Also included within the Chapter 7 Trustee's duties is the authorization to "abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate[,]" 11 U.S.C. § 554(a) (2006), and if he does not, the Chapter 7 Trustee may be ordered to do so upon the request of a party in interest, provided that party in interest meets its burden of proof and presents a *prima facie* case that the property is burdensome to the estate or of inconsequential value. 11 U.S.C. § 554(b) (2006); *In re DiDario*, 232 B.R. 311, 313 (Bankr. D.N.J. 1999); *In re Dillon*, 219 B.R. 781, 785 (Bankr. M.D. Tenn. 1999).

In determining whether to order abandonment, the court should focus on "whether there is a reason that the estate's interest in the property should be preserved or, instead, whether the property is so worthless or burdensome to the estate that it should be removed therefrom." *Morgan v. K.C. Mach. & Tool Co. (In re K.C. Mach. & Tool Co.)*, 816 F.2d 238, 246 (6th Cir. 1987) (citations omitted). "[W]here the estate has no equity in a particular property, and the estate is to be liquidated, abandonment will virtually always be appropriate because no unsecured creditor could benefit from its administration." *In re Beaudoin*, 160 B.R. 25, 31 (Bankr. N.D.N.Y. 1993) (citations omitted). Nevertheless, although a lack of equity generally "sets forth a prima facie case that the property is of inconsequential value and benefit to the estate [in liquidation cases, the] prima facie case can be rebutted, *e.g.*, by proof that the secured creditor's liens can be subordinated to an interest of the

5

trustee, or possibly by establishing that some other form of value or benefit would accrue to the estate by retention of the property." *Beaudoin*, 160 B.R. at 32.

In this case, the Chapter 7 Trustee claims that the equity the Debtors now have in the Rutledge Pike Property due to payments through their confirmed Chapter 13 plan belongs to the estate and thus, the property should be sold. On the other side, the Debtors argue that the equity is not part of the Chapter 7 estate. Whether property is included within the converted bankruptcy estate is determined by § 348(f)(1) which states as follows:

> (f)(1) Except as provided in paragraph (2), when a case under chapter 13 of this title is converted to a case under another chapter under this title—
>
> > (A) property of the estate in the converted case shall consist of property of the estate, as of the date of filing of the petition, that remains in the possession of or is under the control of the debtor on the date of conversion;
> >
> > (B) valuations of property and of allowed secured claims in the chapter 13 case shall apply only in a case converted to a case under chapter 11 or 12, but not in a case converted to a case under chapter 7, with allowed secured claims in cases under chapters 11 and 12 reduced to the extent that they have been paid in accordance with the chapter 13 plan; and
> >
> > (C) with respect to cases converted from chapter 13—
> >
> > > (i) the claim of any creditor holding security as of the date of the filing of the petition shall continue to be secured by that security unless the full amount of such claim determined under applicable nonbankruptcy law has been paid in full as of the date of conversion, notwithstanding any valuation or determination of the amount of an allowed secured claim made for the purposes of the case under chapter 13; and
> > >
> > > (ii) unless a prebankruptcy default has been fully cured under the plan at the time of conversion, in any proceeding under this title or otherwise, the default shall have the effect given under applicable nonbankruptcy law.

6

> (2) If the debtor converts a case under chapter 13 of this title to a case under another chapter under this title in bad faith, the property of the estate in the converted case shall consist of the property of the estate as of the date of conversion.

11 U.S.C. § 348(f) (2006). Although § 348(f)(1)(B) was amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA), because this issue is determined by an examination of subsection (f)(1)(A), which was not amended by BAPCPA, a majority of the cases relied upon by the court in making its determination in this contested matter were decided pre-BAPCPA, but they are nevertheless applicable to this BAPCPA case.

"Congress did not intend that a chapter 13 debtor should lose the benefit of any equity accrued in an asset because of said debtor's compliance with the chapter 13 plan payments." *In re Nichols,* 319 B.R. 854, 857 (Bankr. S.D. Ohio 2004). Accordingly, "[s]ection 348(f) was enacted to resolve a split in the law about what property is included in the bankruptcy estate when a debtor converts from Chapter 13 to Chapter 7." *In re Pruneskip*, 343 B.R. 714, 716 (Bankr. M.D. Fla. 2006).

> The legislative history of § 348(f) supports that Congress's intended outcome is that payments held by the Chapter 13 trustee revert to the debtor on conversion. . . . . It included the following illustration of the "serious disincentive to file chapter 13 filings" it sought to eliminate with § 348(f).
>
>> [A] debtor who had $10,000 equity in a home at the beginning of the case, in a State with a $10,000 homestead exemption, would have to be counseled concerning the risk that after he or she paid off a $10,000 second mortgage in the chapter 13 case, creating $10,000 in equity, there would be a risk that the home could be lost if the case were converted to chapter 7 (which can occur involuntarily). If all of the debtor's property at the time of conversion is property of the chapter 7 estate, the trustee would sell the home...to realize the $10,000 in equity for the unsecured creditors and the debtor would lose the home.

*In re Michael*, 699 F.3d 305, 314-15 (3d Cir. 2012) (internal citations omitted); *see also Salas v. McGranahan (In re Salas)*, 2006 WL 3300770, at *4, 2006 U.S. Dist. LEXIS 85686, at *12 (E.D. Cal. Nov. 14, 2006) ("The legislative history indicates that equity created during the chapter 13 case is not property of the estate.") (citation and brackets omitted)); *Kendall v. Lynch (In re Lynch)*, 363 B.R. 101, 107 (B.A.P. 9th Cir. 2007) ("Excluding equity resulting from debtors' payments on loans secured by their residence . . . subsequent to their chapter 13 filing in a case converted to chapter 7 serves the congressional purpose of encouraging chapter 13 reorganizations over chapter 7 liquidations, as reflected in the legislative history.").

> Congress was concerned that transferring the benefits made by a debtor by diligently making payments under a chapter 13 plan to the unsecured creditors if the case converted to one under chapter 7 "would create a serious disincentive to chapter 13 filings because debtors would fear that property attained after filing, *including equity created by payment of secured debts*, could be lost if the case were converted. The legislative history also states that equity created during the chapter 13 case is not property of the estate."

*Nichols,* 319 B.R. at 856 (quoting 3 COLLIER ON BANKRUPTCY ¶ 348.07[1] (15th ed. rev. 2004) (emphasis added)).

Based upon the foregoing legislative history, the majority of courts resolving this issue found that, upon conversion, equity accrued through plan payments was not property of the subsequent Chapter 7 bankruptcy estate.

> Since property of the Chapter 7 estate relates back to what was property of the bankruptcy estate when the Chapter 13 was commenced and since the Debtor still has the vehicle in his possession, the present 'equity' in the vehicle does not belong to the Chapter 7 trustee or to unsecured creditors of this estate.

> "The spirit of § 348(f)(1)(A) is best captured by a rule that property acquired by the Chapter 13 estate or by the debtor after the Chapter 13 petition does not become property of the Chapter 7 estate at a good-faith conversion. The method of

> acquisition after the Chapter 13 petition should not matter. . . ." Lundin, CHAPTER 13 BANKRUPTCY, 3d ed. § 316.1, at 316-18. In this case, the Debtor's acquired equity in the vehicle did not become property of the Chapter 7 estate upon conversion pursuant to § 318(f)(1)(A)[.]

*In re Woodland*, 325 B.R. 583, 586 (Bankr. W.D. Tenn. 2005). Similarly, the District Court for the District of Oregon came to the following conclusion:

> Although § 348(f)(1)(A) deems all "property of the estate" upon conversion to Chapter 7 to include property of the estate at the time of the Chapter 13 petition (if still in the possession of the debtor), the statute does not indicate whether equity in such property that did not exist at the time of the Chapter 13 filing should nevertheless be considered property of the estate for Chapter 7 purposes. . . . .
>
> [Section] 348(f)(1)(A) specifically limits the property of the estate upon conversion to the property of the estate, i.e., the debtor's interest in the property, as of the date the Chapter 13 petition was filed. Therefore, to the extent that appellant acquired equity in the Subaru Forester after the filing of her Chapter 13 petition, such equity is not property of the estate upon conversion to Chapter 7. . . . .
>
> At the least, the statute is ambiguous as to whether equity created during Chapter 13 becomes property of the estate upon conversion, given that post-petition earnings and property acquired before conversion are not considered property of the estate. Thus, § 348(f)(1)(A) must be interpreted in light of its legislative purpose, which was to resolve the split of authority regarding whether property and earnings acquired after a Chapter 13 filing became property of the estate upon conversion. As noted by several courts, Congress amended the Bankruptcy Act in 1994 to protect property, earnings, and equity interests acquired during the pendency of Chapter 13 proceedings to encourage Chapter 13 filings. . . . .
>
> I find the legislative intent particularly applicable to this case, where equity in the vehicle was created by appellant's paydown of the vehicle loan. To deny appellant the benefit of these payments does not comport with the plain meaning of or policy underlying § 348(f)(1)(A).

*In re Boyum*, 2005 WL 2175879, at *2-3, 2005 U.S. Dist. LEXIS 20054, at *6-9 (D. Or. Sept. 6, 2005) (citations omitted); *see also Pruneskip*, 343 B.R. at 717 ("[T]his court is convinced that the property of the estate and the Debtor's equity in the two (2) 1998 Ford Winstars is determined as of the filing date of the Chapter 13 Petition, and not the date on which the Debtor's case was converted

9

to a Chapter 7 case. Therefore, the Debtor, on the date of filing his Chapter 13 Petition, had no equity in the two automobiles.").

> More recently, the Northern District of Alabama examined this issue and held:
>
> There is a consensus among courts that equity attributed to appreciation in a property's value may not be claimed by the trustee in a converted case. Such appreciation may come from an overall increase in market values – inflation – and from increased value caused by renovations to the property paid for by a debtor. Why should increased equity from renovations paid for by a debtor be treated differently from equity resulting from a debtor's payments of a mortgage? Both arise from money spent by the debtor during his chapter 13 case and there should be no distinction between how the two are treated. Similarity [sic], after the commencement of a chapter 13 case, it is not uncommon for debtors to purchase homes and automobiles utilizing post petition, purchase money secured debt. . . . . Such homes and automobiles are assets acquired after the filing date of the chapter 13 case, so under Section 348(f)(1)(A) they are not property of the estate in the converted case, and any equity, no matter how large, may not be claimed by the chapter 7 trustee. Why should equity in a post petition asset created by a debtor's payment of a secured debt be treated differently from similar equity in property owned on the filing date? Logically and equitably there should be no difference.

*Leo v. Burt (In re Burt)*, 2009 WL 2386102, at *3, 2009 Bankr. LEXIS 2384, at *16-17 (Bankr. N.D. Ala. July 31, 2009). Additionally, the Bankruptcy Court for the Middle District of Florida, in a post-BAPCPA case, held that "[t]he Court finds the greater weight of authority, and the legislative intent, supports the Debtors' position that the subject accumulated equity [due to the payments made under the Chapter 13 plan] is not part of the converted Chapter 7 case." *In re Robinson*, 472 B.R. 854, 856 (Bankr. M.D. Fla. 2012). Likewise, Collier on Bankruptcy states that "[i]t is clear, however, that payments on a secured claim during a bankruptcy case prior to conversion do not normally create

equity that can become property of the estate. Property of the estate in a converted case is governed by section 348(f)(1)." COLLIER ON BANKRUPTCY ¶ 348.07[4] (16th ed. 2011).[1]

The court agrees with the reasoning of the foregoing cases and holds that the equity in the Rutledge Pike Property is not property of the Debtors' Chapter 7 bankruptcy estate. Based upon the Joint Stipulations, the Rutledge Pike Property has a value of $172,000.00 and at reconversion to Chapter 7, the Debtors' mortgage obligations to First Tennessee Bank were $89,276.50.[2] Because the equity created by the $54,316.81 in principal paid by the Debtors to First Tennessee Bank during the pendency of their Chapter 13 case is not part of the Chapter 7 estate, it must be added back to the current outstanding indebtedness, thus establishing an indebtedness of $143,593.31 at the time of the reconversion. On its face, and without regard to the Noland Company judgment liens, the Rutledge Pike Property therefore has equity approximating $28,406.69. However, the court must also factor in the Debtors' homestead exemption of $7,500.00[3] and expenses associated with a sale which at a minimum would pay the 6% real estate commission of $10,320.00 assuming the Rutledge Pike Property sold at the $172,000.00 value stipulated by the parties. Adding these amounts reduces the potential equity from $28,406.69 by $17,820.00 to $10,586.69. Whether the Noland Company's agreement with the Chapter 7 Trustee to accept 50% of the equity remains viable given the court's

---

[1] Such is not the case if the debtor's Chapter 13 case is converted in bad faith. In that event, "the property of the estate in the converted case shall consist of the property of the estate as of the date of conversion." 11 U.S.C. § 348(f)(2); *see In re Wiggins*, 2012 WL 3889099 (Bankr. E.D. Tenn. Sept. 7, 2012).

[2] At a hearing on April 4, 2013, on a motion filed by First Tennessee Bank seeking relief from the automatic stay to allow it to foreclose its lien encumbering the Rutledge Pike Property, the court was advised that the Debtors had ceased making their mortgage payments due to the uncertainty of the present litigation. The amount of First Tennessee Bank's claim has, therefore, increased, but the amount of the current indebtedness is not part of the record before the court.

[3] The court adds the homestead exemption under the assumption that the judicial liens held by the Noland Company are subject to avoidance under 11 U.S.C. § 522(f)(1)(A) (2006).

ruling, it nonetheless has liens totaling $70,229.22. If it were to accept half of the present equity, it would receive $5,293.34 leaving the Debtors' estate with a like amount, which the court can easily conclude would be insufficient to pay the Chapter 7 Trustee's commission and attorney fees.[4] Therefore, with or without the agreement of the Noland Company to split the equity, there is no value to the Rutledge Pike Property that will benefit unsecured creditors. The court will not allow the sale of the Rutledge Pike Property when it is apparent that the funds, if any, produced by a sale would be insufficient to pay administrative expenses, much less make a distribution to unsecured creditors.

For the above reasons, the court finds that the Rutledge Pike Property is burdensome and of inconsequential value to the bankruptcy estate. The Chapter 7 Trustee will be directed to abandon the Rutledge Pike Property and the court's Order will constitute the abandonment.

An Order consistent with this Memorandum will be entered.

FILED: April 24, 2013

BY THE COURT

/s/ RICHARD STAIR, JR.

RICHARD STAIR, JR.
UNITED STATES BANKRUPTCY JUDGE

---

[4] Assuming the Rutledge Pike Property sold for $172,000.00, the Chapter 7 Trustee's commission computed under 11 U.S.C. § 326 (2006) would amount to $11,850.00. Additionally, Mr. Newton was appointed attorney for the Chapter 7 Trustee by an Order entered on October 19, 2012, and would, were funds available, be entitled to compensation in that capacity.